

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-12-00721-CV

**PHILADELPHIA INDEMNITY INSURANCE COMPANY** a/s/o Mirsan, L.P., d/b/a Sienna
Ridge Apartments,
Appellant

v.

Carmen A. **WHITE**,
Appellee

From the 57th Judicial District Court, Bexar County, Texas
Trial Court No. 2011-CI-16235
Honorable Peter Sakai, Judge Presiding

Opinion by:    Marialyn Barnard, Justice

Sitting:        Sandee Bryan Marion, Chief Justice
                Marialyn Barnard, Justice
                Luz Elena D. Chapa, Justice

Delivered and Filed:  January 4, 2017

REVERSED AND REMANDED

Appellant Philadelphia Indemnity Insurance Company ("Philadelphia"), as subrogee of
Mirsan, L.P. d/b/a Sienna Ridge Apartments, sued appellee Carmen White for damages related to
an apartment fire allegedly caused by White.  In the suit, Philadelphia alleged White breached
paragraph 12 of her apartment lease — which included a catch-all phrase that required White to
reimburse Philadelphia for any damages not due to Philadelphia's negligence or fault — thereby
rendering her liable for the damages caused by the fire.  After a jury found in favor of Philadelphia,
the trial court granted White's motion for judgment notwithstanding the verdict ("JNOV").

Philadelphia appealed. A majority of a three-justice panel of this court affirmed the trial court's judgment in favor of White, holding paragraph 12 of the lease, the provision White was alleged to have breached, is void as against public policy and unenforceable.[1] *See Philadelphia Indem. Ins. Co. v. White*, 421 S.W.3d 252, 259 (Tex. App.—San Antonio 2013), *rev'd*, 490 S.W.3d 468 (Tex. 2016). Philadelphia filed a petition for review in the Texas Supreme Court, which was granted. In its opinion, the supreme court affirmed the portion of our judgment that held the catch-all provision in paragraph 12 of the lease is not ambiguous, an issue upon which both the majority and dissent in this court agreed. *See Philadelphia Indem.*, 490 S.W.3d at 477; *see also* 421 S.W.3d at 256; *id.* at 260 n.2 (Barnard, J., dissenting). However, the supreme court reversed the portion of our judgment that held paragraph 12 of the lease is void as against public policy and rendered judgment that the lease provision is not unenforceable on public policy grounds. *See Philadelphia Indem.*, 490 S.W.3d at 491. Because this court's majority opinion did not address White's remaining defenses to the enforcement of the lease, the supreme court remanded the matter back to this court for consideration of those defenses. *Id.* On remand, we reverse the trial court's judgment and remand the matter to the trial court for entry of judgment in favor of Philadelphia in accordance with the jury's verdict.

## BACKGROUND

White entered into a nine-month apartment lease at Sienna Ridge Apartments in San Antonio, Texas. Before moving in, White signed a rental application and a lease contract prepared by the Texas Apartment Association ("TAA"). After moving in, White received a brand new washer and dryer from her parents. A few days later, a fire originated inside White's dryer,

---

[1] On original submission to this court, Chief Justice Sandee Bryan Marion, joined by Justice Luz Elena Chapa, authored the majority opinion. Justice Barnard dissented, opining the trial court erred in granting White's JNOV on any of the grounds asserted by White.

destroying her apartment and several adjacent units. White testified she had only used the dryer two or three times prior to the incident. White admitted that on the day of the incident, she overloaded the dryer with "a duvet, some sheets, a blanket, decorative pillows, and a standard or queen-sized bed pillow." White testified she did not wash the items beforehand, and did not read the safety booklet that came with the dryer. A few moments after starting the dryer, White smelled something, opened the dryer and saw flames inside the drum. She then called 911.

Mirsan filed a damage claim with its insurance carrier, Philadelphia, which adjusted and paid the claim. Philadelphia then asserted its subrogation rights against White to recover damages. Philadelphia initially sued White for negligence, alleging White failed to read the dryer's instruction booklet and loaded the dryer with prohibited items, namely a "foam pillow," which was a fire hazard. Subsequently, Philadelphia amended its pleadings to add a breach of contract claim, alleging White violated paragraph 12 of the TAA lease by failing to timely reimburse Sienna Ridge for damages caused by the fire.

White moved for summary judgment on Philadelphia's breach of contract claim. The trial court denied her motion, and the case proceeded to trial. At the close of Philadelphia's case-in-chief, White moved for a directed verdict on Philadelphia's breach of contract claim. The trial court denied White's motion. The case was then submitted to the jury on both the negligence and breach of contract claims. The jury found in favor of White on the negligence claim, but found in favor of Philadelphia on the breach of contract claim, awarding Philadelphia all of its claimed damages plus attorney's fees.

Thereafter, Philadelphia filed a motion for entry of judgment, and White filed a motion for JNOV. After a hearing on these motions and additional briefing, the trial court issued a letter stating it was granting White's motion for JNOV and denying Philadelphia's motion for entry of judgment. Ultimately, the court signed a final judgment, entering a take nothing judgment in favor

of White.  On original appeal to this court, we affirmed the trial court's judgment.  The supreme court reversed the portion of our judgment holding paragraph 12 is void as against public policy, remanding the matter back to this court to address White's remaining defenses to the enforcement of paragraph 12.

## ANALYSIS

### *Standard of Review*

A trial court may disregard a jury's verdict and grant a motion for JNOV only when there is no evidence to support the jury's finding.  *Bank of Am., N.A. v. Eisenhauer*, 474 S.W.3d 264, 265 (Tex. 2015) (citing *Tanner v. Nationwide Mut. Fire Ins. Co.*, 289 S.W.3d 828, 830 (Tex. 2009)); *Perez v. Arredondo*, 452 S.W.3d 847, 853 (Tex. App.—San Antonio 2014, no pet.); TEX. R. CIV. P. 301.  A trial court may also grant a JNOV if a directed verdict would have been proper because a legal principle precludes recovery.  We review a JNOV under a legal sufficiency or "no evidence" standard of review, "meaning we credit evidence favoring the jury verdict if reasonable jurors could, and disregard contrary evidence unless reasonable jurors could not."  *Tanner*, 289 S.W.3d at 830; *Guzman v. Synthes*, 20 S.W.3d 717, 719 (Tex. App.—San Antonio 1999, pet. denied).  If there is more than a scintilla of evidence to support the jury's finding, then the JNOV should be reversed.  *Tanner*, 289 S.W.3d at 830 (citing *Wal-Mart Stores, Inc. v. Miller*, 102 S.W.3d 706, 709 (Tex. 2003) (per curiam)).  More than a scintilla of evidence exists when the evidence "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions."  *Gharda USA, Inc. v. Control Sols., Inc.*, 464 S.W.3d 338, 347 (Tex. 2015); *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 601 (Tex. 2004).

*Application*

Philadelphia contends once again the trial court erred in granting White's motion for JNOV and overturning the jury's finding that White breached her apartment lease. As noted above, Philadelphia alleges White breached paragraph 12 of the TAA lease, which states:

> DAMAGES AND REIMBURSEMENT. You must promptly pay or reimburse us for loss, damage, consequential damages, government fines or charges, or cost of repairs or service in the apartment community due to: a violation of the Lease Contract or rules; improper use; negligence; *other conduct by you or your invitees, guests or occupants; or any other cause not due to our negligence or fault.* You will indemnify and hold us harmless from all liability arising from the conduct of you, your invitees, guests, or occupants, or our representatives who perform at your request services not contemplated in this Lease Contract. Unless the damage or wastewater stoppage is due to our negligence, we're not liable for—and you must pay for— repairs, replacements and damage to the following if occurring during the Lease Contract term or renewal period: (1) damage to doors, windows, or screens; (2) damage from windows or doors left open; and (3) damage from wastewater stoppages caused by improper objects in lines exclusively serving your apartment. We may require payment at any time, including advance payment of repairs for which you're liable. Delay in demanding sums you owe is not a waiver.

(emphasis added).

Philadelphia argues the catch-all provision in paragraph 12 — "or any other cause not due to our negligence or fault"— rendered White liable for the damage caused by the dryer fire. Philadelphia argues, based on the evidence presented at trial, there were only two possible causes for the fire: White's misuse of the dryer, or a defect in the dryer. Even though the jury found White was not negligent, Philadelphia argues that because White owned the brand new dryer, and the dryer fire admittedly caused the damage, she was required under paragraph 12 of the TAA lease to pay for all damage. Philadelphia contends her failure to pay constituted a breach of contract, as found by the jury.

Because the trial court did not specify the grounds for granting White's JNOV motion, we must uphold the trial court's ruling if any of the remaining grounds — grounds other than those disposed of by the supreme court — will support the judgment. *See Fort Bend Cty. Drainage Dist.*

*v. Sbrusch*, 818 S.W.2d 485, 394 (Tex. 1991); *Garza v. Cantu*, 431 S.W.3d 96, 101 (Tex. App.—Houston [14th Dist.] 2013, pet. denied). It is Philadelphia's burden to discredit the remaining grounds raised in White's motion. *See Sbrusch*, 818 S.W.2d at 394; *Garza*, 431 S.W.3d at 101.

White contends, based on the supreme court's decision, there are four remaining defenses to enforcement of the lease that this court must consider: (1) lack of consideration; (2) unconscionability; (4) lack of fair notice given the risk-shifting contractual clause; and (5) improper creation of a new theory of strict liability.[2] *See Philadelphia Indem.*, 490 S.W.3d at 475–91. We address each in turn.

## LACK OF CONSIDERATION

White contends she did not receive any "consideration" for agreeing to paragraph 12 of the TAA lease. Philadelphia argues that although White pled "lack of consideration," she waived the issue by failing to request the trial court submit the issue to the jury. Moreover, Philadelphia argues that when consideration is lacking, the entire contract is void, not just a portion of it, and White cannot prove the TAA lease lacked consideration.

We first address Philadelphia's waiver argument. Philadelphia argues lack of consideration is an affirmative defense that goes to the question of contract formation, and is a question of fact that must be submitted to the jury. *See Burges v. Mosley*, 304 S.W.3d 623, 628 (Tex. App.—Tyler 2010, no pet.). By failing to submit the issue to the jury, Philadelphia argues White waived the issue, and therefore, it cannot serve as a basis to uphold the trial court's grant of her motion for JNOV.

---

[2] As previously noted, White also originally claimed paragraph 12 was ambiguous and void as against public policy. These defenses were the subject of the supreme court's decision to affirm in part — as to ambiguity — and reverse in part — as to the claim paragraph 12 was void as against public policy. *See Philadelphia Indem.*, 490 S.W.3d at 477, 491. Thus, they need not be readdressed on remand.

Although "failure of consideration is an affirmative defense," *see* TEX. R. CIV. P. 94, lack of consideration, as alleged here, is not. *See Constr. Fin. Servs., Inc. v. Chicago Title Ins. Co.*, No. 04-12-00375-CV, 2013 WL 1846613 at *18 n.8 (Tex. App.—San Antonio May 1, 2013, pet. denied) (mem. op.). Lack of consideration is not an affirmative defense because it does not provide an independent reason to file suit against the plaintiff; rather, it goes directly to the plaintiff's cause of action. *Id.* Furthermore, this court has held that what constitutes consideration is a question of law. *Marx v. FDP, LP*, 474 S.W.3d 368, 378 (Tex. App.—San Antonio 2015, pet. denied); *Brownwood Ross Co. v. Maverick Cty.*, 936 S.W.2d 42, 45 (Tex. App.—San Antonio 1996, writ denied). Therefore, we hold the failure to submit the issue to the jury did not constitute waiver. *See Marx*, 474 S.W.3d at 378; *Brownwood Ross*, 936 S.W.3d at 45.

Now we address White's contention that there was a lack of consideration with regard to the TAA lease. Consideration is a fundamental element of every valid contract. *Alex Sheshunoff Mgmt. Servs., L.P. v. Johnson*, 209 S.W.3d 644, 659 (Tex. 2006); *Marx*, 474 S.W.3d at 378. Consideration is a bargained-for exchange of promises or return performance and consists of benefits and detriments to the contracting parties. *Marx*, 474 S.W.3d at 378; *McLernon v. Dynegy, Inc.*, 347 S.W.3d 315, 335 (Tex. App.—Houston [14th Dist.] 2011, no pet.) (citing *Roark v. Stallworth Oil & Gas, Inc.*, 813 S.W.2d 492, 496 (Tex. 1991)). Lack of consideration refers to a contract that lacks mutuality of obligation. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 857–58 n.26 (Tex. 2009); *Fed. Sign v. Texas S. Univ.*, 951 S.W.2d 401, 409 (Tex. 1997). However, the existence of a written contract presumes consideration for its execution. *Frequent Flyer Depot, Inc. v. Am. Airlines, Inc.*, 281 S.W.3d 215, 224 (Tex. App.—Fort Worth 2009, pet. denied); *see Fielding*, 289 S.W.3d at 858 (holding it is presumed that when parties make agreement they intend it to be effectual; contracts will be construed in favor of mutuality).

The supreme court has held that by signing a contract, a party is presumed to have read and understood its contents. *See In re Prudential Co. of Am.*, 148 S.W.3d 124, 134 (Tex. 2004); *see also Cantella & Co. v. Goodwin*, 924 S.W.2d 943, 944 (Tex. 1996) (holding Texas law presumes party who signs contract has read it and knows of its contents). Our review of the TAA lease signed by White shows it contains numerous mutual obligations between Sienna Ridge and White. For example, the TAA lease required White to pay Sienna Ridge $845.00 per month in return for Sienna Ridge permitting her to live on its premises. The lease also includes a list of responsibilities for the owner of the property and the resident, including Sienna Ridge's responsibility to "keep common areas reasonably clean," "maintain fixtures, hot water, heating, and A/C equipment," in return for White's responsibility to pay rent and deposit, among other things. Therefore, we hold there was no lack of consideration related to White's signing of the TAA lease. *See Am. Airlines, Inc.*, 281 S.W.3d at 224. Accordingly, the trial court could not have granted White's JNOV based on lack of consideration.

LACK OF FAIR NOTICE

White argues paragraph 12 of the TAA lease failed to provide fair notice given the risk-shifting nature of the catch-all provision in paragraph 12. Philadelphia argues this contention was rejected by the Texas Supreme Court in *Churchill Forge, Inc. v. Brown*, 61 S.W.3d 368 (Tex. 2001), where the court analyzed and upheld a prior version of the same paragraph with regard to a fair notice challenge.

As in the instant case, *Churchill Forge* involved an apartment fire allegedly caused by a tenant, which extensively damaged the apartment complex. *Id.* at 369. The tenant's mother co-signed the lease with her son. *Id.* After the fire, the apartment complex sued the mother, asserting the lease required her, as a co-tenant, to pay for any damages resulting from her son's negligence.

*Id.* The mother defended against the suit on several of the same grounds asserted by White in her motion for JNOV, including lack of fair notice. *See id.* at 370.

The supreme court rejected the mother's fair notice argument, noting the fair notice doctrine covers only "contractual provisions relieving a party in advance of its own negligence." *Id.* at 373. Thus, as the court explained, the doctrine applies only when a party seeks release or indemnity from the consequences of its *own* negligence. *Id.* at 373–74. In *Churchill Forge*, Churchill Forge did not seek indemnity or release of its own negligence. *Id.* Similarly, Philadelphia did not seek to release itself from the consequences of its own negligence, and it neither sued White for indemnity nor did it assert any rights against White under a release. Thus, White's fair notice claim does not apply under the specific language set forth in *Churchill Forge*. *See id.* at 374.

White admits fair notice under these circumstances is not "explicitly" required by the fair notice doctrine, but argues this court should hold it applies given "the spirit of the purpose of the doctrine." However, as set out above and as White concedes, the supreme court has only applied the requirements of the fair notice doctrine to indemnity agreements and releases "when such exculpatory agreements are utilized to relieve a party of liability for its own negligence in advance." We decline to expand the law as suggested by White.

Accordingly, we hold White's argument based on the fair notice doctrine did not preclude recovery by Philadelphia, *see Sbrusch*, 818 S.W.2d at 394, and does not support the trial court's decision to grant White's motion for JNOV.

## UNCONSCIONABILITY

White also argues paragraph 12 of the TAA lease is unconscionable because it is a contract of adhesion, and she had no choice but to sign the lease. We disagree.

A contract is unenforceable if it is so one-sided that it is unconscionable under the circumstances existing when the parties made the contract. *In re Poly-America, L.P.*, 262 S.W.3d 337, 348 (Tex. 2008). Whether unconscionability exists in a contract is a question of law for the court. *Hoover Slovacek LLP v. Walton*, 206 S.W.3d 557, 562 (Tex. 2006). Unconscionability is determined in light of a variety of factors aimed to prevent oppression and unfair surprise; "in general, a contract will be found unconscionable if it is grossly one-sided." *Poly-America, L.P.*, 262 S.W.3d at 348.

In this case, the evidence shows White had the right to review the lease contract before she signed it. In fact, White's rental application included a statement that advised she could consult an attorney in reviewing her lease. White testified she read the entire rental application before signing it. White testified she did not feel the need to consult with an attorney prior to submitting the rental application and did not have any questions about the application. White does not claim she did not understand the lease. Therefore, we hold White has failed to show the TAA lease was "grossly one-sided". *See Poly-America, L.P.*, 262 S.W.3d at 348. Accordingly, we hold White's unconscionability argument fails, and could not provide the trial court with a basis to grant her motion for JNOV.

## STRICT LIABILITY

Finally, White argues paragraph 12 of the TAA lease creates a "new theory of strict liability" because a tenant would always be strictly liable for any damage regardless of cause and origin. She states in her supplemental brief that "[t]enants have no excuse, remedy or defense for not complying with Provision 12 of the TAA lease to indemnify the landlord for any damages to the property not caused by the negligence of the landlord." Based on the supreme court's analysis in its review of this case, we disagree.

In its decision, the supreme court recognized the catch-all provision in paragraph 12 "is *susceptible* of an application in contravention of" Chapter 92 of the Texas Property Code. *See Philadelphia Indem.*, 490 S.W.3d at 490 (emphasis added). However, such agreements between tenants and landlords are not in violation of Chapter 92 if they are based upon "tenant-caused" damages. *Id.* at 491. Thus, if a tenant proves and obtains an affirmative finding that she did not cause the damage in question — either by negating her role in causing the damage or by establishing an alternative cause of the damage — any lease provision requiring the tenant to pay would be invalid. *Id.* at 490–91. In other words, if a tenant establishes she did not cause the damage and obtains a finding thereon, the tenant thereby "establish[es] the factual predicate to contractual invalidity," precluding recovery by the landlord. *Id.* Thus, the provision does not create a strict liability standard; rather, a tenant can avoid application of such a risk-shifting provision by simply proving she did not cause the damage. *See id.* Here, White failed to establish or obtain the required finding that she did not cause the damage to the property. *See id.*

Accordingly, because paragraph 12 does not create strict liability — White could have avoided its application by procuring a finding that she did not cause the damage, we hold paragraph 12 of the TAA lease did not create a new theory of strict liability. Accordingly, the trial court could not have granted White's motion for JNOV on this basis.

## CONCLUSION

Based on the foregoing, we hold White's remaining grounds precluding enforcement of paragraph 12 of the lease — those not addressed by the supreme court — did not entitle her to JNOV. Accordingly, we reverse the trial court's judgment and remand to the trial court for entry of judgment in favor of Philadelphia in accordance with the jury's verdict and this court's opinion.

Marialyn Barnard, Justice